UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Beatrice Craig,

    Plaintiff,

    v.                                                Civil Action No. 2:11-CV-116

Social Security Administration,
Commissioner,

    Defendant.

## OPINION AND ORDER
(Docs. 7, 12)

Plaintiff Beatrice Craig brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Craig's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm (Doc. 12). For the reasons stated below, the Court DENIES Craig's motion and GRANTS the Commissioner's motion.

## Background

Craig was forty-six years old on the alleged disability onset date of March 31, 2004. (AR 57, 62, 589.) She completed tenth grade and has held a number of jobs, including machine operator and fast food worker. (AR 66, 112, 590.) In November 2004, Craig stopped working due to a broken foot and back pain. (AR 62, 68.) She

claims to have pain in her "[l]ower [b]ack going down [her] right side and leg" (AR 75), and that she takes medication, such as Flexeril and ibuprofen, to abate her ailments (AR 66).

In February 2005, Craig filed applications for supplemental security income and disability insurance benefits.  (AR 54, 57.)  In support of her disability application, Craig alleged back problems, sciatica, and a broken foot.  (AR 61.)  She subsequently added irritable bowel syndrome and depression to her claimed impairments.  (AR 590, 596.)  Craig's application was denied initially and on reconsideration.  (AR 20-21, 35-40.)

On November 7, 2006, Administrative Law Judge ("ALJ") Frederick Harap conducted a hearing on Craig's application.  (AR 471.)  On February 23, 2007, ALJ Harap issued a decision finding Craig not disabled under the Social Security Act.  (AR 19.)  Thereafter, the Decision Review Board denied Craig's request to review ALJ Harap's determination, and she commenced an action in this Court on August 24, 2007.  (AR 5.)  During that litigation, the Commissioner filed a stipulated motion to reverse and remand, which the Court granted.  (AR 510, 516.)  On remand, ALJ Ruth Kleinfield ("the ALJ") conducted a hearing at which Craig was represented by counsel and testified on her own behalf.  (AR 584, 587-88.)  On October 23, 2009, the ALJ issued a decision, again finding Craig not disabled under the Social Security Act.  (AR 499.)  Thereafter, the Appeals Council found no reason to disturb this decision, rendering it final.  (AR 484.)  Having exhausted her administrative remedies, Craig commenced this action on May 5, 2011.  (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step commands that the ALJ determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, the ALJ first determined that Craig had not engaged in SGA since March 31, 2004, her alleged onset date. (AR 492.) Next, the ALJ found that Craig had the severe impairments of degenerative disc disease and an affective disorder. (*Id.*) The ALJ, however, concluded that Craig's irritable bowel syndrome was not a severe impairment. (AR 493.) Proceeding to step three, the ALJ found that Craig did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*) The ALJ then determined that Craig had the RFC to perform "unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) allowing for the opportunity to sit and stand at will." (AR 495.) Relying on this assessment, the ALJ found that Craig was not capable of performing any of her past relevant work. (AR 497.) Nevertheless, the ALJ decided that there were jobs existing in significant numbers in the national economy that Craig could perform, considering her age, education, work experience, and RFC. (*Id.*) Thus, the ALJ concluded that Craig had not been under a disability since the alleged onset date of March 31, 2004. (AR 498.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful employment by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

4

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is restricted to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role in reviewing the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded [that] decision," *Hernandez v. Barnhart*, No. 05-9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (internal quotation marks omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

**I.       Credibility Determination**

Craig claims that the ALJ failed to properly evaluate her credibility with regard to the limiting effects of her impairments. (Doc. 7 at 3.) Contrary to Craig's assertions, however, the ALJ's credibility determination was based on substantial evidence.

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain. *Id.* (citing *McLaughlin v. Sec'y of HEW*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5-6.

In this case, the ALJ found that Craig's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent" that they contradict the RFC. (AR 496.) The ALJ explained that, despite Craig's allegations that she was unable to work due to back pain and depression, "there is no reliable and consistent evidence of this." (*Id.*) Rather, the ALJ remarked:

"[Craig] leads an active life." (*Id.*) Specifically, the ALJ noted and the record demonstrates that Craig "was able to prepare simple meals, go shopping with others, and do simple chores[.]" (AR 495; *see* AR 84, 593, 595.) Furthermore, the ALJ observed Craig's ability to remain static throughout the entirety of the administrative hearing, despite Plaintiff's claim that she needed to be able to alternate positions between sitting and standing. (AR 496.)

Contrary to Craig's claim, the ALJ's credibility determination was not based exclusively on Plaintiff's daily activities. Rather, the ALJ also relied on the medical evidence of record, and included a detailed summary of Plaintiff's treatment records and the relevant medical opinions in his decision. (AR 492-93, 496.) For example, the ALJ summarized the opinion of treating neurologist Dr. Joseph Corbett, who opined that Craig could frequently lift or carry 10 pounds, occasionally lift 20 pounds, and could walk or stand for 2 hours and sit for about 6 hours in an 8-hour workday. (AR 413-14, 496.) Similarly, the ALJ considered the opinion of treating physician Dr. Daniel Foley, who opined that Craig could frequently lift or carry 10 pounds, occasionally lift 20 pounds, and must periodically alternate between sitting and standing during an 8-hour workday. (AR 420-21, 496.) Next, the ALJ referenced treating psychologist Dr. Joseph Rainville's mental functional assessment, which found that Craig could understand short and simple instructions. (AR 469, 496.) The ALJ accurately noted that, although Dr. Rainville believed that Craig would be unable to perform jobs entailing detailed instructions, he did not suggest that she was unable to function otherwise due to her psychological problems. (*See* AR 469-70, 496.)

The ALJ was entitled to consider this medical evidence, as well as Craig's level of activity in assessing her credibility.  20 C.F.R. §§ 404.1529(c), 416.929(c).  Moreover, the ALJ's rejection of Craig's allegations of symptoms so severe as to prevent her performance of any type of work was supported by substantial evidence, as discussed above.

## II.  Dr. Corbett's Opinions

Next, Craig claims that the ALJ erred when she failed to consider the entirety of treating neurologist Dr. Corbett's medical opinions and treating records.  (Doc. 7 at 6.)  But in fact, Dr. Corbett's treatment notes—taken as a whole—do not support a finding of disability.  The record contains sixteen documents describing Dr. Corbett's treatment of Craig over slightly less than a two year period.  (AR 195-97, 199, 201-03, 205, 344, 346-47, 349-51, 459-60.)  These documents show that, at times, Craig had pain in her hip and leg  (*see* AR 197, 201, 203, 205), and she had consistent back pain, *albeit* at varying levels (*compare* AR 195, 197 *with* AR 199).  The notes record that epidural injections administered to Craig had a ranging effect; sometimes relieving the pain, and sometimes not relieving it.  (*See* AR 195-96, 202.)  Dr. Corbett also recorded both negative and positive straight leg tests on multiple occasions.  (*See* AR 197, 199, 203, 346-47, 349, 459.)  During several later examinations, Dr. Corbett noted that Craig had intact strength and sensation, suggesting that her ailments had somewhat abated.  (AR 346-47, 349, 459, 460.)  Considering this evidence, Craig's claim that these documents clearly establish a

prolonged and debilitating injury is an overstatement.[1]  Rather, these reports document varying objective test results and an overall improvement in Craig's condition over time.

Additionally, Craig contends that the ALJ impermissibly ignored Dr. Corbett's standing limitations, which affect her ability to perform light work.  (Doc. 7 at 7-8.)  In Dr. Corbett's functional assessment, he opined that Craig could stand and/or walk "at least 2 hours in an 8-hour workday."[2]  (AR 413.)  He further provided that Craig could sit for "about 6 hours in an 8-hour workday."  (AR 414.)  During Craig's hearing, the vocational expert ("VE") testified that there were jobs, both regionally and nationally, for an individual with an RFC of unskilled light work which allowed for a sit/stand option.  (AR 601.)  The expert later explained that an inability to stand six hours in a day would not affect this conclusion because such a limitation was already contemplated by the sit/stand option.  (AR 602.)  As the ALJ found Craig's RFC to include "the opportunity to sit and stand at will" (AR 495), it is inaccurate to characterize the RFC as "flawed due to its failure to acknowledge how the claimant's standing limitations would affect her ability to do light work" (Doc. 7 at 7).  Rather, the VE's testimony made clear that the ALJ

---

[1]  The Court recognizes that on January 27, 2006, Dr. Corbett opined that Craig was unable to work.  (AR 350.)  This opinion as to the ultimate question of disability, however, is owed no deference.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (providing that "some kinds of findings – including the ultimate finding of whether a claimant is disabled and cannot work – are reserved for the Commissioner. . . . That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability" (citation and internal quotation marks omitted)).  Moreover, Dr. Corbett opined on a later date that Craig possessed the physical ability to frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and lacked any manipulative limitations.  (*See* AR 413-14.)

[2]  Craig claims that Dr. Corbett's assessment states that she was "only capable" of standing or walking for two hours.  (*See* Doc. 7 at 8.)  But in fact, Dr. Corbett's statement that Craig could stand and/or walk "at least 2 hours in an 8-hour workday" indicates a potential to stand and/or walk for *more than* 2 hours in an *8-hour* workday.  (AR 413.)

incorporated this limitation into Craig's RFC by including a sit/stand option.  (*See* AR 602).

For these reasons, the ALJ properly considered the opinions of Dr. Corbett, and there is no basis to remand on these grounds.

## III. Vocational Expert Testimony

Finally, Craig claims substantial evidence does not support the ALJ's finding that she could perform other work.  (Doc. 7 at 8.)  She argues that the VE's testimony at the administrative hearing did not satisfy the Commissioner's burden at step five because the VE failed to supply her attorney with data upon request during cross-examination.  (*Id.* at 9.)  She also argues that this failure violated her due process rights.  (*Id.* at 12.)  For the following reasons, these claims fail.

As previously summarized, the regulations require the ALJ to determine at step five whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)."  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks omitted).  The grids are not conclusive, however, when a claimant has additional limitations.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (holding that the grids "may not be controlling [because] the guidelines [cannot] provide the exclusive framework for making a disability determination" if a claimant "suffered from additional nonexertional impairments" (internal quotation marks omitted)).  In these cases the "application of the grid guidelines and the necessity for expert testimony must be

determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986); *see* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist.").

In this case, the ALJ determined that Craig needed "the opportunity to sit and stand at will." (AR 495.) During the administrative hearing, a VE testified that a person with Craig's impairments could perform the duties of a cashier, parking lot attendant, or assembly worker in a factory setting. (AR 601.) The VE explained that her conclusion did not rely on the Occupational Employment Statistics from the Department of Employment and Security Service because those numbers were based on the Dictionary of Occupational Titles ("DOT")[3], which does not incorporate a sit/stand option. (AR 604.) Rather, the VE only considered a percentage of the Occupational Employment Statistics for the purpose of eliminating the jobs under the DOT that required standing. (AR 606.)

At the administrative hearing, Craig's counsel was afforded the opportunity to cross-examine the VE regarding the basis for her methodology. The VE cited a 2003 study by a rehabilitation professional which concluded that 90% of sedentary, unskilled jobs allowed a sit/stand option. (AR 605-06.) The VE then testified that, in her expert

---

[3] The DOT provides a narrative description of the duties and responsibilities of each listed job by job title. The regulations provide that the Commissioner may take administrative notice of the jobs listed in the DOT. 20 C.F.R. §§ 404.1566(d), 416.966(d); *see* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("The regulations . . . provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT.").

opinion, this percentage was too large and that a greater reduction was necessary. (AR 606-07.) Craig's counsel requested a copy of this study, but the VE stated that she only had a summary of the study. (AR 606.)

Relying on a Seventh Circuit case, *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002), Craig argues that a VE must supply documentation supporting her conclusion during cross-examination and that the VE's failure to do so here was error. (Doc. 7 at 11.) Recently, in *Brault v. Comm'n*, No.11-2121, 2012 WL 2477842 (2d Cir. June 29, 2012), the Court of Appeals rejected the argument Craig advances here. Moreover, in *Brault* the court concluded that an ALJ was not required to state express reasons for accepting a VE's testimony where, as here, the VE's testimony did not match the job types in the DOT with other data showing employment numbers. The circuit rejected the reasoning of *Donahue,* expressing "doubts about the Seventh Circuit's approach." The circuit reconfirmed the "flexible" substantial evidence approach to disability proceedings. *Id.* at 10-11.

Vocational expert testimony must be "based on identifiable statistics" and "informed by [the expert's own] expertise and experience," so as to satisfy the "substantial evidence" standard applicable in disability proceedings. *Palmer v. Astrue*, No. 1:10-cv-151-jgm, 2011 WL 3881024, at *6 (D. Vt. Sept. 2, 2011); *see also Ali v. Astrue*, No. 09-cv-166, 2010 WL 502779, at *5 (W.D.N.Y. Feb. 9, 2010) (providing that "the ALJ needs some evidentiary basis to rely upon the opinions of the vocational expert"). Courts have also held, however, that a VE is allowed to rely on his or her own expertise when the DOT does not provide reliable job information for a particular case.

12

*See Irish v. Chater*, No. 95-315-B, 1996 WL 211797, at *7 (D. N.H. Feb. 27, 1996) ("An ALJ uses a vocational expert to provide an opinion, based on his or her expertise, on complex issues about a claimant's abilities and job market possibilities that cannot easily be resolved by reference to manuals.") (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").

Here, the DOT did not provide reliable information for a claimant with Craig's RFC of unskilled light work allowing for the opportunity to sit and stand at will. (AR 495.) During her testimony, the VE referenced the 2003 study that adjusted the DOT for Craig's limitation, but expressly stated that she did not rely on this study. (AR 604.) Rather, the VE adjusted the numbers from the 2003 study downward based on her own expertise, a finding that was to Craig's benefit because it further reduced the number of jobs. (*Id.*) This testimony, therefore, constituted substantial evidence because it was based on the VE's expertise and, in fact, worked to Craig's benefit. *See Piekarski v. Astrue*, No. 08-cv-372S, 2009 WL 2992277, at *5 (W.D.N.Y. Sept. 15, 2009) (holding that a VE's testimony is acceptable if it is based on verifiable sources and expert's own adjustments based on his experience). Accordingly, the Commissioner has satisfied his limited burden at step five of the sequential analysis.

## Conclusion

For these reasons, the Court DENIES Craig's motion (Doc. 7), GRANTS the Commissioner's motion (Doc. 12), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 10th day of July, 2012.

          /s/ John M. Conroy
          John M. Conroy
          United States Magistrate Judge